**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| WESTERN SKY INDUSTRIES, LLC,<br><br>*Plaintiff/Counter-Defendant*,<br><br>vs.<br><br>COLTTECH, LLC,<br><br>*Defendant/Counter-Plaintiff*, | Case No. 07-1350-EFM |

**MEMORANDUM AND ORDER**

Presently before the Court is Plaintiff/Counter-Defendant Western Sky Industries, LLC's ("WSI") Motion for Summary Judgment (Doc. 27) seeking partial summary judgment on $214,883.34 of Defendant/Counter-Plaintiff ColtTech, LLC's ("ColtTech") Counterclaim. For the following reasons, the motion is denied.

**I. Background**

WSI brought this commercial dispute against Colt Tech regarding the contracting for and supply of certain parts for integration into aircraft actuators. ColtTech has filed a counterclaim for payment of various orders of circuit boards which were manufactured by ColtTech and delivered to WSI, which is the subject matter of this motion. The following facts are either uncontroverted or taken in the light most favorable to the non-moving party.

Over a number of years, ColtTech supplied bare and assembled circuit boards, and other components, to WSI. On occasion, WSI supplied ColtTech with components for integration into

"build to specification" board assemblies. Pursuant to an agreement with Eclipse Aviation ("Eclipse"),[1] WSI produced and delivered to Eclipse certain aerospace products for newly manufactured airplanes. To manufacture these aerospace products, WSI submitted purchase orders to ColtTech on various dates in 2006 requesting manufacture of these board assemblies. WSI required that these assemblies conform to the designs and specifications designated by Electromech.[2]

During this business relationship, WSI would send purchase orders to ColtTech, and ColtTech would fill the purchase orders and deliver the requested goods to WSI. The purchase orders that WSI submitted to ColtTech contained a "date of delivery" for the circuit boards. WSI and ColtTech's business relationship did not involve a long-term contract, but instead, involved a series of purchase orders made over a period of time. On occasion, WSI rejected and returned non-conforming products manufactured and delivered by ColtTech, which ColtTech would then cure and re-delivered to WSI.

WSI ordered the circuit boards at issue from ColtTech through a number of purchase orders. Before September 2006, ColtTech manufactured and delivered the ordered circuit boards to WSI. WSI later rejected and returned the circuit boards claiming that they did not conform to the contract. Upon returning the non-conforming circuit boards, WSI informed ColtTech that it did not want the circuit boards to be cured. Nevertheless, ColtTech cured the non-conforming circuit boards, but

---

[1] Eclipse Aviation is an aviation manufacturer and not a party in this litigation. WSI purchased goods from ColtTech and used those goods to fulfill its contract with Eclipse Aviation.

[2] Electromech is a subsidiary of WSI. Although the contracts at issue are between ColtTech and Electromech, WSI is acting as the principal for Electromech.

WSI refused the accept them. In September of 2006, WSI ceased using ColtTech as a manufacturer. Both parties claim that their respective terms and conditions govern the contracts in dispute.[3]

In this Motion for Partial Summary Judgment, WSI asserts that: (1) Colttech's terms and conditions cannot be integrated into the contracts at issue; and (2) Colttech has no statutory right to cure the non-conforming circuit boards.

## II. Standard of Review

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[4] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[5] A fact is "material" when "it is essential to the proper disposition of the claim."[6] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[7]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[8] In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[9]

---

[3]The Court notes that only ColtTech's terms and conditions are relevant to the instant motion.

[4]Fed. R. Civ. P. 56(c).

[5]*Haynes v. Level 3 Comm., LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6]*Id.*

[7]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[8]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[9]*Id.* (citing *Celotex*, 477 U.S. at 325.)

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[10] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[12] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[13] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[14]

Finally, summary judgment is not a "disfavored procedural shortcut," but an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

### III. Analysis

During various dates prior to September 2006, WSI claims that a significant quantity of circuit boards it purchased from ColtTech were non-conforming. In many instances, WSI claims it was unable to discover the non-conforming circuit boards until after the circuit boards were incorporated into actuators.[16] WSI spent time and money identifying and disassembling actuators

---

[10] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[11] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[12] *Adler*, 144 F.3d at 671.

[13] *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[14] *Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[15] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[16] Actuators are mechanical devices that mobilize certain aircraft components (e.g. landing gear, wingflaps, etc.) at the direction of a pilot or crew and include (i) electronic circuit boards; and (ii) transzorb units.

that contained defective circuit boards, and even devoted its own resources to re-work some of the circuit boards.  WSI argues that there are no genuine issues of material fact showing that ColtTech had a either a contractual or statutory right to cure the non-conforming circuit boards at issue.

ColtTech's counter claim asserts that it is entitled to be paid in full for the circuit boards it delivered to WSI.  ColtTech alleges it sent WSI its terms and conditions in approximately June 2005 and in October 2006, and that these terms and conditions govern the contracts.  While ColtTech admits that a portion of the circuit boards it delivered were later determined to be non-conforming, it argues it had a statutory and contractual right to cure these non-conforming circuit boards.  ColtTech further alleges that some of the non-conforming circuit boards were due to flaws in the designs provided to it by WSI, and therefore, ColtTech had no duty to cure those particular circuit boards.  Nonetheless, ColtTech claims it cured the non-conforming circuit boards returned to it by WSI as it had done in the past with other non-conforming boards.  WSI refused to accept the cured goods.

### 1.  Statutory Right to Cure

WSI first argues Colttech has no statutory right to cure the non-conforming circuit boards because it cannot bring forth any material facts meeting the requirements of K.S.A. § 84-2-508. The statute provides:

> (1) Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.
>
> (2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller

may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender.[17]

Under K.S.A. § 84-2-508, a seller may cure non-conforming goods under either subsection (1) or (2).[18] As a result, to survive summary judgment, a buyer must demonstrate that no material fact exists showing the seller has a right to cure under either subsection.

### a. K.S.A. § 84-2-508(1)

WSI argues that ColtTech has no right to cure pursuant to K.S.A. § 84-2-508(1). Under this statute, ColtTech has no right to cure unless it cures the circuit boards before the specified time for performance.[19] WSI argues that ColtTech has acknowledged that it did not cure the circuit boards before the date of delivery for all purchase orders, and therefore, the time for performance under the contract expired before ColtTech cured the nonconforming circuit boards. Thus, WSI contends that there are no material facts showing ColtTech has a right to cure under K.S.A. § 84-2-508(1).

Because the "date of delivery" outlined in the purchase orders may not necessarily be the "time for performance" under K.S.A. § 84-2-508(1), the Court finds that a genuine issue of a material fact exists that precludes granting summary judgment. During his deposition, Mike Lynn testified that ColtTech's course of dealing with WSI demonstrates that the "date of delivery" is not the "date of performance" as WSI suggests.

> A: [Mike Lynn]. After the PO's [purchase orders] were released sometimes Tira [Adamson] [Electromech employee] would call with a pull-in or a push-out, and we would just accommodate that with our work flow.

---

[17]K.S.A. § 84-2-508.

[18]*See Inter-America Ins. Corp. v. Imaging Solutions Co.*, 39 Kan. App. 2d 875, 887, 185 P.3d 963, 970 (2008).

[19]K.S.A. § 84-2-508(1).

> Q: [Chris Nelson]. When you say pull-in or push-out, can you explain that?
>
> A: That means Eclipse [Aviation] wanted them a little sooner perhaps – or Electromech wanted them a little sooner, so that's called a pull-in. Or they had plenty on hand, let's push it out.[20]

ColtTech argues that this excerpt from Mike Lynn's deposition shows that the time for performance for delivering the goods to WSI could be pulled-in or pushed-out depending on various factors with any particular order. "A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."[21] ColtTech asserts that it regularly modified the original date of delivery identified in the purchase orders depending on WSI's production needs, and denies that it did not deliver the cured items within the date of performance pursuant to statute. Therefore, the Court finds that because a question of material fact exists as to whether ColtTech cured the non-conforming goods within the "time for performance" pursuant to K.S.A. 84-2-508(1), we are precluded from granting summary judgment at this time.

### b. K.S.A. 84-2-508(2)

WSI further argues in its Reply that ColtTech has no right to cure pursuant to K.S.A. § 84-2-508(2). WSI asserts that "there is no genuine issue of material fact that ColtTech did not have reasonable grounds to believe it could cure the defective product placed at issue by its counterclaim."[22] WSI's reasoning is flawed because it incorrectly interprets K.S.A. § 84-2-508(2).

---

[20]Doc. 28-3, pp. 24-25.

[21]K.S.A. § 84-1-205(1).

[22]Doc. 31, p. 8.

WSI incorrectly interprets K.S.A. § 84-2-508(2) when it argues that ColtTech cannot present any material facts showing "it [ColtTech] had 'reasonable grounds to believe' that it could cure the [circuit boards]."[23]  Under K.S.A. § 84-2-508(2), the requirement is not whether the seller (ColtTech) had reasonable grounds to believe that it could cure the non-conforming circuit boards, but rather, the statutory requirement is whether the seller (ColtTech) had reasonable grounds to believe the circuit boards would be acceptable to the buyer (WSI).[24]  K.S.A. § 84-2-508(2) clearly states that if the seller (ColtTech) had reasonable grounds to believe the circuit boards would be acceptable to the buyer (WSI), and if the seller (Colttech) seasonably notifies the buyer (WSI) of its intention to cure, the seller (Colttech) is allowed a reasonable time beyond the contract deadline to make a conforming tender.[25]  Still, WSI argues that ColtTech has no statutory right to cure because WSI informed ColtTech that it did not want the non-conforming circuit boards to be cured. However, absent an agreement between the parties indicating otherwise, ColtTech's statutory right to cure takes precedence over WSI's after-the-fact declaration attempting to eliminate that right.

As the moving party, it is WSI's burden to demonstrate that there are no material facts showing that Colttech had reasonable grounds to believe the circuit boards it provided to WSI would be acceptable.[26]  WSI has failed to meet this burden, and therefore, WSI's motion for summary judgment is denied.

---

[23]*Id.*

[24]K.S.A. § 84-2-508(2) (1996).

[25]*Id.* cmt.3.

[26]K.S.A. § 84-2-508

It is unlikely WSI could prove that no disputed issue of material facts exist showing ColtTech had reasonable grounds to believe the circuit boards would be acceptable under K.S.A. § 84-2-508(2). "A seller has reasonable grounds to believe a tender would be acceptable (1) when it knows of the non-conformity but has some reason, such as a trade usage or prior course of dealing, to believe the tender is nevertheless acceptable; or (2) when a reasonably prudent seller would not know of the non-conformity."[27] Based on ColtTech and WSI's prior course of dealing, a disputed issue of material fact exists as to whether ColtTech had reasonable grounds to believe the circuit boards it delivered to WSI would be acceptable. Therefore WSI is not entitled to summary judgment.

**2. Contractual Right to Cure.**

WSI asserts that summary judgment is appropriate because ColtTech has no evidence that it submitted its terms and conditions to WSI in approximately June 2005. In addition, WSI argues that the terms and conditions sent by ColtTech in October 2006, which WSI does not dispute receiving, cannot be integrated into the contracts at issue because these terms were sent after the initial contracts were formed, and it did not consent to any modification to those contracts terms. WSI concludes that because ColtTech cannot show that its terms and conditions were part of the contracts, ColtTech's terms and conditions cannot be the source of its right to cure.

**a. ColtTech's June 2005 terms and conditions.**

WSI argues that ColtTech has no evidence to prove that it sent its terms and conditions to WSI in approximately June 2005. ColtTech, however, disagrees, arguing that it has provided sufficient support for its position through the affidavit of Jeff Lynn in which he submits, based on

---

[27] K.S.A. § 84-2-508(2), cmt. 3.

-9-

his personal knowledge, that ColtTech sent WSI its terms and conditions in approximately June 2005.  The affidavit states in part:

> 3.  I [Jeff Lynn] am a member of ColtTech, LCC and have first-hand knowledge of the matters set forth herein.
>
> 7.  Colttech's terms and conditions were sent by Colttech to WSI along with acknowledgments of WSI's purchase orders, with respect to at least the first few orders in approximately June, 2005.[28]

ColtTech argues that Lynn's affadavit establishes that there is a genuine issue for trial because it shows that ColtTech sent its terms and conditions in approximately June 2005.  ColtTech further argues these terms and conditions contained a warranty which, under Kansas law, explains or supplements the contracts, and concludes that it is this warranty that gives it a contractual right to cure.

WSI argues that Jeff Lynn's affidavit stating that Colttech's terms and conditions were sent by Colttech to WSI in approximately June 2005 is not predicated on personal knowledge, and therefore, inadmissible as evidence.  WSI further argues that because Lynn's affidavit is inadmissible, ColtTech has not brought forth any material facts showing it sent its terms and conditions to WSI at any time during their business relationship.

The party opposing summary judgment must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[29]  The Federal Rules of Evidence Rule 602 states, "[a] witness may not testify to a matter  unless evidence is introduced sufficient to support a finding that the witness has

---

[28] Doc. 30-2, pp. 2-3, ¶¶ 3, 7.

[29] *Mitchell*, 218 F.3d at 1197.

personal knowledge of the matter."[30]  Furthermore, conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[31]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[32]

Here, Jeff Lynn's states in his affidavit that the matters which he addresses are based on first-hand knowledge.[33]  He indicates that based on that personal knowledge, ColtTech's terms and conditions were sent to WSI in approximately June 2005.  Although Mr. Lynn does not provide an exact date that the terms and conditions were sent, this statement is sufficient at this point to create a genuine issue of material fact to allow a jury to determine whether those terms and conditions were, in fact, sent within the timeframe Mr. Lynn avers.  Accordingly, WSI is not entitled to summary judgment on this issue.

### b. ColtTech's October 2006 terms and conditions.

ColtTech alleges that it once again sent its terms and conditions toWSI in October 2006 ("2006 terms"), which WSI does not dispute receiving.  WSI, however, argues that there are no material facts showing that the 2006 terms are a part of any contract, as these terms were sent by Colttech after the contracts for the circuit boards were made. Mike Lynn, ColtTech's Vice President of Engineering and Quality, testified in his deposition that WSI cut ColtTech off as a supplier in September 2006, and subsequent invoices were due to rework and were not new invoices to which the 2006 terms would apply.  Specifically, Mike Lynn testified:

---

[30]Fed R. Evid. 620.

[31]*White*, 45 F.3d at 363.

[32]*Bones*, 366 F.3d at 875.

[33]Doc. 30-2, p.2, ¶3.

-11-

> "Q. [Chris Nelson]. I've seen, and we may well go through them today, an e-mail I believe from you where you indicate that Electromech cut ColtTech off as a supplier at some point in September of 2006. Is that right?
>
> A. [Mike Lynn]. Yes.
>
> Q. How do you explain, then, the invoice dates here for September, October, January of '07, February of '07, April of '07?
>
> A. They are reinvoices of DMRs.
>
> Q. Okay. All of these invoices represented on Exhibit B are reinvoices of DMRs.
>
> A. Yes.
>
> Q. So ColtTech initially shipped the goods to Electromech. Electromech shipped them back for one reason or another. ColtTech did rework on or pursuant to the DMRs and is now seeking to recover for its initial work and the rework or the initial work?
>
> A. The initial work. There is no charge for the rework."[34]

WSI, therefore, contends that the 2006 terms were sent to WSI one month after both WSI cut ColtTech off as a supplier and after the last contract with WSI had been formed. WSI claims that ColtTech has brought forth no evidence indicating it formed any new contracts with WSI after September 2006, and submits that it did not agree to any modification to the previous existing contracts, warranting summary judgment.

The Kansas Uniform Commercial Code addresses subsequent modification of contracts. K.S.A. § 84-2-209 provides:

> (1) An agreement modifying a contract within this article needs no consideration to be binding.
>
> (2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants

---

[34]Doc. 28-3, p.8.

-12-

such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the statute of frauds section of this article (section 84-2-201) must be satisfied if the contract as modified is within its provisions.

(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.

(5) A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver."[35]

When a party proposes to amend a previously executed agreement with terms that materially alter the terms of the original agreement, the amendment does not become a part of the contract unless both parties agree.[36] Accordingly, modification of a prior agreement that materially alters that agreement requires express and mutual assent by all parties named in the contract.[37] The fact that a party continues in a contract after additional or different terms have been received by that party is not sufficient to establish consent to those additional or different terms.[38]

Here, WSI denies that it has assented to any additional terms or conditions subsequent to its pre-October 2006 invoices. While ColtTech has presented no evidence to the contrary, it argues that the 2006 terms do not materially alter the terms of any of the previous agreements because the terms sent with the initial invoices control, and moreover, WSI made no objection to the 2006 terms.

---

[35]K.S.A. § 84-2-209.

[36]*Southwest Eng'g Co. Inc. v. Martin Tractor Co. Inc.*, 205 Kan. 684, 694, 473 P.2d 18, 25 (1970).

[37]*Wacheter Mgmt. Co. v. Dexter & Cheney, Inc.*, 282 Kan. 365, 371, 144 P.3d 747, 752 (2006).

[38]*Id.* at 371-72.

The Court has insufficient evidence before it to make a determination as to whether the 2006 terms materially alter the previous contracts as neither party has presented the Court with the prior agreements. WSI, as the moving party, bears the burden of providing the Court with sufficient evidence to demonstrate the absence of a genuine issue of material fact, which in this case, it has failed to do.[39] As a result, we deny summary judgment on this issue.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff/Counter-Defendant Western Sky Industries' Motion for Partial Summary Judgment (Doc. 27) is hereby DENIED.

**IT IS SO ORDERED.**

Dated this 21st day of July, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[39] *See Thom*, 353 F.3d at 851.